NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OHAD ASSOCIATES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TOWNSHIP OF MARLBORO, THE MAYOR AND TOWN COUNCIL OF THE TOWNSHIP OF MARLBORO, and TOWNSHIP OF MARLBORO PLANNING BOARD,<br><br>    Defendants. | Civ. No. 10-2183<br><br>OPINION & ORDER |

THOMPSON, U.S.D.J.

## I.  INTRODUCTION

This matter comes before the Court upon Plaintiff's Motion to Remand [docket # 4].  The Court has decided the motion upon consideration of the parties' written submissions, without holding oral argument.  For the reasons given below, the motion is granted in part and denied in part.

## II.  BACKGROUND

Plaintiff Ohad Associates, LLC is a business engaged in construction and the development of real estate.  Since 1993, it has owned a 48-acre parcel of property in Marlboro, New Jersey ("the Property").  In 2003, Plaintiff filed a development application with Defendant Township of Marlboro Planning Board ("Planning Board"), seeking approval for a development containing 382 residential housing units, 85 of which would be affordable housing units.  The Planning Board held a series of hearings on the application between September 2, 2003 and April 7, 2004.  The board ultimately denied the application at the April 7 hearing on the grounds that

1

Plaintiff sought too many variances from local ordinances. On July 30, 2004, Plaintiff filed a lawsuit (different from this action) challenging the Planning Board's denial of its application. Plaintiff alleged that the Planning Board's decision violated a Consent Judgment entered against Marlboro Township in 1985. That judgment had been signed in order to resolve a series of prior lawsuits brought against the Township by various real estate developers under the *Mt. Laurel* doctrine.

A brief summary of this doctrine is necessary in order to understand the present lawsuit and resolve Plaintiff's motion. In *Southern Burlington County N.A.A.C.P. v. Mount Laurel Township* ("*Mount Laurel I*"), the New Jersey Supreme Court held that a municipality that exercises its zoning powers in a way that excludes low and middle income persons from obtaining housing violates the New Jersey Constitution. 67 N.J. 151 (1975). Subsequent litigation engendered by this decision led to a second New Jersey Supreme Court case, commonly referred to as *Mount Laurel II*, in which the court laid out more specific procedures for enforcing the Court's holding in *Mount Laurel I*. 92 N.J. 158 (1983). These procedures include the designation of specialized judges to hear *Mt. Laurel* litigation, the creation of a special "builder's remedy" action, whereby a developer can sue a municipality for permission to build high-density housing so long as the housing contains a minimum number of affordable units, and the use of special masters to assist in litigation. *Mt. Laurel II* also modified the doctrine of collateral estoppel to grant a six year period of repose from *Mt. Laurel* litigation to any municipality that complies with a court judgment specifying that municipality's affordable housing obligations.

The New Jersey legislature responded to *Mount Laurel II* by passing the Fair Housing Act "FHA" in 1985. The FHA created the Council on Affordable Housing ("COAH"), an agency charged with establishing regulations that ensure each municipality meets its affordable

2

housing obligations.  The FHA provides that any municipality may design and implement a compliance plan that sets forth how the municipality intends to meet its *Mt. Laurel* obligations.  COAH is charged with reviewing these compliance plans, and if COAH certifies a municipality's plan, the municipality gains some protection from *Mt. Laurel* litigation.  A special transition feature included in the FHA allowed municipalities involved in ongoing *Mt. Laurel* litigation at the time FHA was passed to transfer their cases to COAH.  The COAH regime was designed as an optional procedure; participation in the system is voluntary, and municipalities are free to take their chances with the judicially managed procedure set forth in *Mt. Laurel II* if they believe that the costs of COAH participation outweigh the benefits.

The 1985 Consent Judgment entered against the Marlboro Township ordered that the Township should create 680 units of affordable housing by January 1, 1993.  The Judgment specified that the Property—which was under different ownership at the time—should contain 85 units of affordable housing as well as 299 additional units.  In accordance with *Mt. Laurel II*, the Consent Judgment granted the Township a six-year repose from further litigation.  The 1993 deadline was subsequently extended to April 6, 1995, and thereafter the whole matter was transferred to COAH.  COAH issued a report on April 7, 1997, which denied certification for Marlboro's compliance plan and requested additional information.  The Township amended its compliance plan and re-petitioned COAH for certification on August 21, 1998.  COAH again responded by requesting information and ordering the Township to make additional amendments to its plan.  COAH's consideration of Marlboro Township's petition was still ongoing in 2004 when the Planning Board denied Plaintiff's application.

Around the time Plaintiff filed its 2004 lawsuit against the Planning Board, Marlboro Township again re-petitioned COAH for certification of yet another amended compliance plan.  Plaintiff objected to this new plan.  The parties engaged in mediation, and they reached a

settlement agreement on May 31, 2005, which was ratified by the Marlboro Town Council on August 11. There were some difficulties consummating the settlement, leading to a second settlement agreement, which was again signed and ratified, this time in the summer of 2007. Unfortunately, there were problems consummating this settlement as well. The parties engaged in further mediation, which lead to the additions of two addenda to the 2007 settlement agreement, but despite these achievements, talks broke down in late 2009. Plaintiff then filed this lawsuit on March 30, 2010. It brings a claim under the *Mt. Laurel* doctrine, a claim for promissory estoppel, and federal constitutional claims under the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fifth and/or Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff also alleges a civil conspiracy between the various defendants in this case. Defendants removed this case to federal court on the basis of subject-matter jurisdiction over the federal claims.

### III. ANALYSIS

Plaintiff raises eight distinct grounds for remanding this case to state court: abstention under the *Pullman* doctrine, abstention under the *Burford* doctrine, abstention under the *Younger* doctrine, discretionary remand under 28 U.S.C. § 1441(c), discretionary remand under subsections (c)(1), (c)(2), and (c)(4) of 28 U.S.C. § 1367, and a purported "forum selection clause" in the 1985 Consent Judgment. As the Court will explain, *Pullman* abstention, *Younger* abstention, and 28 U.S.C. § 1441(c) are not applicable in this case, and the passage in the Consent Judgment that Plaintiff characterizes as a "forum selection clause" does not have that effect. However, as the Court will further explain, partial remand—limited to Plaintiff's state law claims—is warranted under 28 U.S.C. § 1367(c)(1), rendering it unnecessary for the Court to pass upon Plaintiff's arguments under subsections (c)(2) & (c)(4). Finally, the Court notes that

while this case might merit abstention under the *Burford* doctrine, this doctrine provides no justification for remanding Plaintiff's federal constitutional claims.

     A.  The *Pullman* Abstention Doctrine

A court considering a request to abstain under the principles of abstention articulated in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), must first determine whether three specific preconditions exist: (1) uncertain issues of state law underlying federal constitutional claims brought in federal court, (2) state law issues amenable to interpretation that would obviate the need for or narrow the scope of the federal constitutional claims, and (3) conditions such that an erroneous federal court interpretation of state law would disrupt important state polices. *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 631 (3d Cir. 1991) (citing *D'Iorio v. County of Delaware*, 592 F.2d 681, 686 (3d Cir. 1978)). If these three conditions are met the court must determine whether the particular circumstances of the case warrant abstention, though abstention will usually be proper in this situation. *Id.* at 631, 633.

Plaintiff has not shown that either of the first two conditions outlined above are present in this case. Plaintiff baldly asserts that recovery under its federal constitutional claims is dependent upon the outcome of uncertain state law claims (*see* Mem. Law Supp. Mot. Remand 13-14), but it does not give any explanation in support of this statement. While Plaintiff is certainly correct that the *Mt. Laurel* doctrine has its share of uncertainties, this abstract proposition does not show that there is any particular legal uncertainty that is relevant to the disposition of Plaintiff's federal constitutional claims. Furthermore, while it is feasible that Plaintiff's success on its state law claims would make any recovery under its federal constitution claims duplicative, this by itself does not "obviate" the need for federal constitutional claims in the way that concept is used in the *Pullman* doctrine. The *Pullman* case featured a claim that a particular Texas statute was unconstitutional, a question that could be mooted altogether if the

5

statute in question was given a limiting construction.  312 U.S. at 501.  In other words, *Pullman* abstention applies only if a state law can be interpreted in such a fashion as to eliminate the alleged federal constitutional violation.  The doctrine does not apply in the much more common situation where a plaintiff seeks relief for a single injury under both state law and the federal constitution.  Since Plaintiff has not given a satisfactory explanation as to what uncertain questions of state law are at issue in this case, much less how those uncertainties are bound up with its federal constitutional claims, this Court will not abstain under the *Pullman* doctrine.

      B.  The *Younger* Abstention Doctrine

*Younger v. Harris*, 401 U.S. 37 (1971), established the doctrine that a federal court may, on certain occasions, abstain from exercising its jurisdiction over a case when doing so would interfere with ongoing state proceedings.  In the Third Circuit, which takes a broader view of this doctrine than most other circuits, three conditions must obtain in order for a district court to abstain under *Younger*:  "(1) there must be an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere, (2) the state proceedings must implicate important state interests, and (3) the state proceedings must afford an adequate opportunity to raise the claims." *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (citing *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 843 (3d Cir. 1996)).

In this case, Plaintiff has not shown that the first of the three conditions listed above is satisfied.  Plaintiff asserts that there are ongoing proceedings before COAH involving the Defendants' *Mt. Laurel* obligations and that it is participating in those proceedings.  However, Plaintiff has not explained how the present lawsuit will interfere with the COAH proceedings.  Plaintiff's submissions do not show what COAH is being asked to determine, nor do they demonstrate that the present lawsuit will infringe upon that determination.  The fact that both this lawsuit and the COAH proceedings concern Defendants' *Mt. Laurel* obligations does not

6

necessarily entail that any interference is likely. In the absence of any showing that this action will interfere with the COAH proceedings, abstention under *Younger* is not appropriate.

    C. Discretionary Remand Under 28 U.S.C. § 1441(c)

Plaintiff also petitions the Court to remand this lawsuit under authority of 28 U.S.C. § 1441(c). That section provides that

> [w]henever a separate and independent claim or cause of action within [a court's federal question jurisdiction] is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

Plaintiff urges this Court to remand this entire lawsuit in accordance with the last clause in this passage, as a "matter in which State law predominates." However, § 1441(c) is inapplicable to this lawsuit. Section 1441(c) explicitly states that it only applies "whenever a separate and independent claim" is joined with a non-removable claim. The Supreme Court and Third Circuit have made clear that "where there is a single injury to plaintiff for which relief is sought, arising from an interrelated series of events or transactions, there is no separate or independent claim or cause of action under § 1441(c)." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 786 (3d Cir. 1995) (citing *American Fire & Casualty Co. v. Finn*, 341 U.S. 6 (1951)). In this case, Plaintiff has alleged only a single injury—i.e., Marlboro Township's refusal to allow it to build housing units on the Property. Accordingly, while Plaintiff makes several different claims its lawsuit, those claims are not "separate and independent" within the meaning of 28 U.S.C. § 1441(c). Since § 1441(c) does not apply to this case, it does not provide any authority for this Court to remand Plaintiff's claims. *Accord id.* (holding that § 1441(c) provided no remand authority in a case where the plaintiffs "rel[ied] on the same series of events for all counts of their complaint.").

    D. The 1985 Consent Judgment

7

Plaintiff argues that the 1985 Consent Judgment entered against the Marlboro Defendants contains a clause that requires the Plaintiff's claims to be adjudicated in state court. The following language is at issue:

> The [New Jersey Superior] Court shall retain jurisdiction over this matter to ensure that the above provisions of this Order and Schedule are enforced and to entertain applications for relief in aid of litigants [*sic*] rights under R.1:10-5 or other appropriate statutes, court rules, common law or constitutional requirements to enforce these provisions.

There are several problems with Plaintiff's efforts to enforce this paragraph as a forum-selection clause. Plaintiff was not a party to the lawsuit in which the Consent Judgment was entered, which calls into doubt whether it is in a position to now enforce that judgment against Defendants. It is also uncertain whether the claims in this lawsuit concern the same rights and duties that the above-quoted clause was intended to protect. However, the Court need not reach these questions for a much simpler reason: this paragraph is not a forum-selection clause.

For purposes of this motion, the relevant question is how to interpret the phrase "shall retain jurisdiction." Plaintiff urges the Court to read that phrase to mean that the Defendants in this case forfeited their right to have an enforcement action brought in any forum other than the Superior Court of New Jersey. However, this interpretation puts too much of a strain on the word "retain." The word "retain" suggests that the Superior Court would, after the case was closed, maintain the jurisdiction it had during the pendency of the case. It does not suggest that other courts would be divested of whatever jurisdiction they might have in a future action. In many situations, a settlement will be enforceable in either state court or federal court. Therefore, if parties to a settlement desire to prohibit the federal enforcement of their agreement, one would expect to see explicit language to that effect. Since the above-quoted paragraph cannot be fairly construed as a forum-selection clause, this action may not be remanded on those grounds.

E.  <u>Discretionary Remand Under 28 U.S.C. § 1367(c)(1)</u>

8

Plaintiff's Complaint contains two claims arising under state law—a state constitutional claim under the *Mt. Laurel* doctrine and a claim for promissory estoppel.  This Court has jurisdiction over these claims by virtue of 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  However, the Court has limited discretion to decide whether or not a particular claim arising under its supplemental jurisdiction should remain in federal court.  Specifically, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim raises a novel or complex issue of State law . . . ."  28 U.S.C. § 1367(c)(1).[1]

When confronted with a claim that raises a novel or complex issue of State law, a federal court may remand (or dismiss) the claim, or it may retain jurisdiction.  In making this decision between remand and retention, the court must consider the consequences of its decision in terms of judicial economy, convenience and fairness to the litigants, and principles of comity.  *Borough of West Mifflin*, 45 F.3d at 788 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966)).  Section 1367(c) authorizes a district court to remand only those individual claims that arise under its supplemental jurisdiction; the court may not remand any federal law claims, even if those claims appear to be mere appendages to what is essentially a state law action.  *See id.* at 787 ("[N]othing in § 1367(c) authorizes a district court to decline to entertain a claim over which is has original jurisdiction.")

---

[1] Plaintiff also moves to remand under subsections (2) and (4) of § 1367(c), which allow for remand when "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction" or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  However, since the Court has determined that remand under subsection (1) is warranted, consideration of these other grounds is unnecessary.

9

In this case, the Court concludes that Plaintiff's *Mt. Laurel* claim raises a complex issue of state law that ought to be remanded to the New Jersey state courts for resolution. The *Mt. Laurel* doctrine is a particularly complex doctrine, and one in which the New Jersey state courts play an integral role. The designation of a specialist judge in each region who handles all of that region's *Mt. Laurel* claims speaks to this complexity, as does the intricacy of the housing-plan approval process, which can be carried out either through COAH or the state judiciary.

Having determined that Plaintiff's *Mt. Laurel* claim raises a complex issue of state law, the Court must determine whether the *Gibbs* factors counsel in favor of remand. Considerations of convenience and judicial economy weigh in favor of this Court retaining jurisdiction. As was stated above, § 1367(c) does not authorize a court to remand federal question claims. Consequently, this Court must retain jurisdiction over Plaintiff's federal constitutional claims, meaning that a remand of Plaintiff's *Mt. Laurel* claim will force the parties to conduct parallel lawsuits in state and federal court. However, principles of comity outweigh these concerns. The New Jersey courts are critical actors in the *Mt. Laurel* system, sharing authority with COAH to determine municipalities' affordable housing obligations and grant municipalities periods of repose from *Mt. Laurel* lawsuits. They have developed and implemented a complex, fact-intensive process for carrying out the New Jersey Supreme Court's mandate, and they continue to develop and implement that process today. *See In re Adoption Of N.J.A.C. 5:94 and 5:95 By New Jersey Council On Affordable Housing*, 390 N.J. Super. 1, 17-30 (App. Div. 2004) (detailing the procedures developed by New Jersey courts and COAH to determine municipalities' obligations under *Mt. Laurel*). The New Jersey courts are structured in such a way as to ensure that *Mt. Laurel* claims are heard by specialized judges who are well-versed in the legal and equitable complexities that permeate that doctrine. A federal court that opts to decide a *Mt. Laurel* claim not only risks making a substantive legal error, but also intrudes upon

an administrative process that has been entrusted to state court judges and state administrative officials.  In light of these weighty concerns, the prudent course of action is to remand Plaintiff's *Mt. Laurel* claim to the New Jersey Superior Court.

Plaintiff's promissory estoppel claim also raises complex issues of state law and will also be remanded.  The doctrine of promissory estoppel is, admittedly, a mostly settled area of law, one in which the New Jersey state courts do not exercise any special function or expertise beyond their general familiarity with New Jersey law.  However, the application of that doctrine in this case appears likely to raise issues that are bound up in the special procedures attendant to the *Mt. Laurel* doctrine.  COAH played a substantial role in the 2007 settlement between Plaintiff and Defendants, and that settlement is the keystone of Plaintiff's promissory estoppel claim.  Consequently, an appraisal of COAH's processes and powers may factor heavily in the resolution of that claim.  Since the Court has already taken the step of remanding Plaintiff's *Mt. Laurel* claim, there is nothing to be gained in the way of convenience, fairness, or judicial economy by retaining jurisdiction over the promissory estoppel claim, and, once again, principles of comity counsel in favor of remand.  Accordingly, that claim also will be remanded.

    F.   The *Burford* Abstention Doctrine

The only ground for remand left to consider is Plaintiff's argument that this Court should abstain from deciding this lawsuit under the *Burford* abstention doctrine.  Having determined that a remand of Plaintiff's *Mt. Laurel* and promissory estoppel claims are warranted under 28 U.S.C. § 1367(c)(1), the applicability of *Burford* to those claims is now moot.  All that remains to decide is whether Plaintiff's federal claims also ought to be remanded.  However, under *Burford* a district court is authorized to dismiss or remand only actions for equitable relief; actions for monetary damages may only be stayed.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996); *Freige v. Sechrest*, 90 F.3d 846, 850-51 (3d Cir. 1996).  Since Plaintiff's

11

federal claims seek only monetary relief, *Burford* does not give this Court any authority to remand them to state court.

## IV. DEFENDANTS' PENDING MOTIONS TO DISMISS

The defendants in this case have filed two motions to dismiss Plaintiff's promissory estoppel claim. By virtue of this opinion and order, that claim will be remanded to the New Jersey Superior Court. Accordingly, it is the Superior Court's province to determine whether or not Plaintiff has alleged a viable promissory estoppel claim, and the motions in this Court to dismiss that claim will be terminated as moot. This Court had also stayed the briefing of Defendants' motion to dismiss Plaintiff's constitutional claims pending the resolution of this Motion to Remand. As the Court has retained jurisdiction over those claims, the briefing of that motion may now resume.

## V. CONCLUSION

For the foregoing reasons, IT IS, this 16th day of August, 2009

ORDERED that Plaintiff's Motion to Remand [docket # 4] is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that Counts I and II of Plaintiff's Complaint are REMANDED to the New Jersey Superior Court, Monmouth County; and it is further

ORDERED that this Court retains jurisdiction over Counts III, IV, V, and VI of the Complaint; and it is further

ORDERED that jurisdiction over Count VII, a claim for civil conspiracy, is remanded insofar as it pertains to Counts I and II and it is retained insofar as it pertains to Counts III, IV, V, and VI; and it is further

ORDERED that Defendants Mayor and Town Council of Marlboro's Motion to Dismiss [docket # 16] is TERMINATED as moot; and it is further

ORDERED that Defendant Township of Marlboro Planning Board's Motion to Dismiss [docket # 17] is TERMINATED as moot; and it is further

ORDERED that briefing on Defendants' Motion to Dismiss [docket # 18] shall resume, with Plaintiff's opposition brief being due ten days from the entry of this order on the docket, and Defendants' reply, if any, being due seventeen days from the entry of this order on the docket.

*/s/  Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.
